IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

CHARLES F. KANTORIK,  :  Bankruptcy No. 10-29069-JAD

    Debtor,  :  Chapter 7

THOMAS T. GOOD,  :  Adversary No. 11-2193JAD

    Plaintiff,

    - vs -

CHARLES F. KANTORIK,

    Defendant.

## MEMORANDUM OPINION

The matter before the Court is the *Complaint Objecting to Discharge of Debtor* (the "*Complaint*") filed by Thomas T. Good (the "Plaintiff"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A),(J) and (O). This *Memorandum Opinion* constitutes this Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. Having considered the written submissions of the parties, the testimony offered at trial and the documentary evidence presented, this Court will enter judgment in favor of the Plaintiff and against Charles F. Kantorik (the "Debtor").

### I.

The Plaintiff was a certified public accountant ("CPA") who sold his accounting practice to the Debtor. Following an alleged default with regard to the sale, the Plaintiff initiated an action against the Debtor, eventually obtaining a partial summary judgment.

Pursuant to this judgment, the Plaintiff garnished a bank account held by the Debtor beginning in 2003.

Ultimately, the Superior Court of Pennsylvania overturned the partial summary judgment and referred the matter back to the Fayette County Court of Common Pleas (the "State Court"). Following a non-jury trial, a judgment was entered in favor of the Plaintiff and against the Debtor in the amount of $26,631.38 on April 10, 2006 (the "Judgment"). In the time since the entry of the Judgment the Plaintiff has not collected any funds from the Debtor. In an attempt to collect on the Judgment, the Plaintiff filed a petition to authorize garnishment of bank accounts maintained by the Debtor's wife and son in the State Court. A hearing was held on the Plaintiff's request on November 8, 2010. While this garnishment action was under consideration by the State Court, the Debtor filed the instant bankruptcy proceeding on December 27, 2010 (the "Petition Date").

On April 6, 2011, the Plaintiff filed the *Complaint*, objecting to the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2)(A). The Plaintiff insists that denial of the discharge is appropriate because the Debtor "has engaged in a pattern of conduct whereby he has fraudulently transferred funds, assets, and earnings, to his wife and son, in an effort to avoid enforcement of a judgment against him by the Plaintiff." (See *Complaint*, ¶ 4).

On July 8, 2011, the Plaintiff submitted a *Motion for Summary Judgment* attaching only the transcripts of depositions taken of the Debtor, the Debtor's wife, and the Debtor' son three hundred sixty-two (362) days prior to the Petition Date. On December 15, 2011, this Court denied the *Motion for Summary Judgment* because the Plaintiff had failed to show that no genuine issue of material fact existed as to whether any fraudulent

transfers occurred or the Debtor maintained fraudulent intent *within one year* of the Petition Date.

Following denial of the *Motion for Summary Judgment*, a trial was held on April 10, 2012. At trial, the Plaintiff presented additional evidence in the form of a transcript of the November 8, 2010 hearing in State Court and the Debtor's 2010 tax returns. The Debtor also testified at trial concerning the nature of the family accounting practice and the conduct of his personal affairs. Following the submission of written closing statements by the parties, the matter is now ripe for adjudication on the merits.

## **II.**

To prevail on a claim for denial of discharge pursuant to 11 U.S.C. § 727(a)(2)(A), the Plaintiff "must prove that: (1) the debtor; (2) transferred or concealed; (3) debtor's property; (4) with intent to hinder, delay, or defraud a creditor; (5) within one year prior to the bankruptcy filing." Seedling Landscaping & Design, Inc. v. Fryer (In re Fryer), 288 B.R. 193, 199 (Bankr. W.D. Pa. 2003) (citing In re Kontrick, 295 F.3d 724, 736 (7th Cir. 2002)). Even if act of the concealment occurred before the one year prior to filing, denial of a discharge will be appropriate under the "continuous concealment" doctrine if the concealment continued with improper intent into the one year period. Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) (citing In re Olivier, 819 F.2d 550, 555 (5th Cir. 1987)). By virtue of seeking to deny the Debtor his discharge the Plaintiff has the burden of proof by a preponderance of the evidence. See Fed. R. Bankr. P. 4005; see also In re Carter, 236 B.R. 173, 182 (Bankr. E.D. Pa. 1999) (citing In re Halperin, 215 B.R. 321, 328 (Bankr. E.D.N.Y. 1997)).

At the time the Plaintiff's *Motion for Summary Judgment* was denied, the Plaintiff had not put forth anything to show that a transfer or concealment had occurred within

a one year period prior to the Petition Date. Additionally, the Plaintiff's theory of liability under the continuous concealment doctrine failed because it was unclear to the Court what property interest the Debtor had allegedly "concealed" and there was nothing of record to indicate that the Plaintiff's alleged improper intent continued into the one year period prior to the Petition Date.

The continuous concealment doctrine has two critical elements: 1) the Debtor concealed a property interest; and 2) the concealment continued, motivated by an improper intent, into the one year period prior to the bankruptcy filing. See Rosen, 996 F.2d at 1531. Regarding the first element it is now apparent that the Debtor has concealed his interest in the income generated through his involvement in his family accounting practice and in certain assets related to the operation of that practice. It is also clear that the Debtor's intent to defraud the Plaintiff by concealing his assets continued into the one year period prior to his Petition Date, and likely through the date of the trial.

A.

Concealment has been defined as "placing assets beyond the reach of creditors or withholding knowledge of the assets by failure or refusal to divulge owed information." In re Fotso, No. 05-29843PM, Adv. No. 05-9069PM, 2007 WL 3287459, *6 (Bankr. D. Md. Nov. 2, 2007) (quoting ALAN N. RESNICK ET AL., COLLIER'S ON BANKRUPTCY ¶ 727.02[6][b] (15th ed. 2007)). It is clear that following the garnishment action in 2003 the Debtor began concealing his interest in the income generated by his family accounting practice.

Since the garnishment in 2003 the Plaintiff insists that he has not maintained any bank accounts in his name.[1]  At trial, the Debtor admitted to transferring cash and checks generated by his work as a CPA to his wife and son beginning in 2003, and continuing until some point in 2007.  (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (1:47 - 1:49 PM); see also Trial Exhibit #8, pp. 7-8 ).  The Debtor also admitted to transferring the personal property associated with his accounting practice to his son.  (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012  (1:57 - 1:59 PM)).

The record also indicates that the Debtor has continued to engage in the concealment of his income related to the family accounting practice at least into the one year period prior to the Petition Date.  At the November 8, 2010 State Court hearing, the Debtor's son admitted that he is not a CPA, and, as a result, some of the work he completes requires the Debtor's "review."  (Trial Exibit #1, p. 17).  The Debtor later revealed at the trial that at least one project requiring the review of a CPA, the audit for Scottdale Borough, was completed in 2010.[2]  (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (2:29 - 2:30 PM)).  The Debtor admits that he is not compensated by his son and does not receive a 1099 or W2 for any work performed.  (See id. at (1:54 - 1:56 PM)).

---

[1] Interestingly, aside from the Plaintiff's judgment, the Debtor is seeking to discharge a substantial amount of unsecured debt ($35,099.00), all of which was allegedly incurred in 2009, a time period when the Debtor insists that he did not maintain a bank account.

[2] The Debtor initially claimed that he could not remember whether the Scottdale Borough audit was completed in either 2009 or 2010. (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (1:42 - 1:43 PM)). However, the Debtor later stated that he thought the Scottdale audit occurred near the end of 2010. (See id. at (2:28 - 2:30 PM)). This Court concludes that the Scottdale audit occurred within one year of the Petition Date because at the Debtor's deposition taken on December 30, 2009, the Debtor did not mention the Scottdale audit and referred to an audit completed for another municipality as "[t]he last [audit] I got. . . ." (See Trial Exhibit #8, p. 5).

The evidence presented at trial also shows that the Debtor's son benefits in other ways from his association with his father as a licensed CPA. The Debtor's son testified at his 2009 deposition that he does not maintain or pay for a business telephone phone number. (See Trail Exhibit #9, p. 9). However, the phone number that rings at the office owned and operated by the Debtor's son has been associated with his father's accounting practice for forty years. (See id. at pp. 19-20; see also Trial Exhibit #8, p. 13). In addition, the only sign on the building which houses the family accounting practice reads "Charles Kantorik CPA." (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (1:58 - 1:59 PM)). While the Debtor insists that he does not "generate the business" for the family accounting practice (see id.), the Debtor's son admitted at the November 8, 2010 State Court hearing that he performs work for his father's clients. (See Trial Exhibit #1, p. 17). The Debtor's son described that when he completes this work the Debtor will write the bid, his son will perform ninety-nine percent of the work and collect payment for it. (See id.).

In exchange for the benefit of his name, his CPA license and his labor on behalf of the family accounting practice, the Debtor receives use of the office premises, insurance and utilities at no cost. (See Trial Exhibit #8, pp. 14-15). Additionally, the Debtor's wife pays "all of the bills" and other household expenses out of her sole account. (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (1:45 - 1:46 PM)). Included in these bills and expenses are a mortgage and payments on an IRS lien on which both the Debtor and his wife are liable. (See id. at (1:45-1:47 PM); see also Trial Exhibit #10, pp. 17-18, 23).

The Debtor also admitted through his deposition taken on December 30, 2009, that he would use the cash drawer at the family accounting practice to cash checks. (Trial

Exhibit #8, pp. 10-11). The Debtor's son confirmed through his testimony that less than two months prior to the Petition Date he did not have any control over the cash drawer at the family accounting practice. (Trial Exhibit #1, pp. 15-16). While the Debtor now insists that he no longer has access to the cash drawer and attempted to re-characterize his prior use of the cash drawer, the Court did not find the Debtor's testimony to be credible.[3] In total, the evidence indicates that at least into the one year period prior to the Petition Date, the Debtor continued to exchange checks for cash by using the family accounting practice. These exchanges are obviously transfers that occurred for the purpose of concealing the Debtor's income generated by his accounting work.

In sum, the Debtor's wife and son pay all of the Debtor's expenses and provide him the ability to continue to use the family accounting practice to generate cash income, thereby frustrating the Plaintiff's attempts to the collect the Judgment over a period of several years. Such a pattern and practice of running a "cash only" business and diverting the benefits of one's labor to an affiliated entity have been considered fraudulent transfers for purposes of § 727(a)(2)(A). See Coady v. D.A.N. Joint Venture III, L.P. (In re Coady), 588 F.3d 1312, 1315-1316 (11th Cir. 2009) (holding that Debtor's diversion of the "fruits of his labor" to a business owned by his wife, and concealment of any regular compensation through use of business bank accounts combined with the financial support he received from his wife was "concealment" for purposes of 11 U.S.C. §

---

[3] Much of the testimony concerning the use of this cash drawer by the Debtor was inconsistent. In his deposition when the Debtor was asked how he cashed client checks without a bank account, the Debtor admitted that he would "trade [his] check for the cash in the drawer" or place "the check in a drawer and take the cash for it." (Trial Exhibit #8, pp. 10-11). At trial, the Debtor insisted that he no longer had access to the cash drawer, and attempted to qualify his earlier statements by insisting that he would only use the cash drawer to exchange a check payable to him for cash if he "stayed late at the office and [ ] needed money for gas." (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (2:03 - 2:06 PM)). This Court finds the Debtor's attempts to qualify this usage unconvincing.

727(a)(2)); see also In re Balch, 25 B.R. 22, 24-25 (Bankr. N.D. Tex. 1982) (holding that a debtor's discharge should be denied when he admitted to depositing monies generated by his operation of a sole proprietorship into a corporate bank account bearing his wife's name, when that account was created for the specific purpose of preventing his creditors from reaching his non-exempt assets).

### B.

With regard to the second element, the Debtor admits that his intent to frustrate the Plaintiff's collection efforts continued at least through the date of the trial. On more than one occasion at trial the Debtor stated directly that his only reason for not maintaining a bank account is to avoid garnishment by the Plaintiff. (See Audio Recording of Hearing Held in Courtroom D, April 10, 2012 (1:44 - 1:45 PM), (2:02 - 2:03 PM)).

In addition to his statement, the Debtor's ongoing fraudulent intent is evidenced by the way in which he continues to conduct his personal and business affairs. The Debtor admits that he currently works four to eight hours per day depending on the season and insists that if he is paid in cash he will take it and if he is paid with a check he will attempt to cash it and pocket the funds. (See id. at (2:05 - 2:07 PM)). While this Court recognizes as a general matter that social security income is not subject to garnishment (see 42 U.S.C. § 407(a)), the Debtor also freely admits that his monthly social security checks are deposited into an account bearing only his wife's name. (See id. at (1:48 - 1:50 PM)). The result of this arrangement is that the Debtor, according to his own tax return, collected approximately $16,000 through his accounting work in 2010, not a cent of which went to pay the Judgment. (See Trial Exhibit #11).

### C.

In sum, the Debtor admits that his only purpose for not maintaining a bank account is to frustrate the Plaintiff's attempt to collect on the Judgment. According to his own testimony, the Debtor has successfully avoided the Plaintiff's collection efforts for several years. To accomplish this objective the Debtor has transferred control of an accounting practice that he operated for nearly forty years to his son. While this occurred several years prior to his Petition Date, the Debtor continued to provide the benefit of his CPA license, his name, and prior advertising efforts to the family accounting practice. In exchange, the Debtor's wife and son operate the family accounting practice in a manner which enables the Debtor to intentionally and fraudulently frustrate the Plaintiff's collection efforts by providing him free office space, paying all of his personal expenses and enabling the Debtor to operate a "cash only" accounting practice.

### IV.

Objections to discharge are to be strictly construed, however, obtaining a discharge "is not an absolute right, but rather, a privilege accorded to honest debtors who conduct their financial affairs with honesty and openness." The Cadle Co. v. Ogalin (In re Ogalin), 303 B.R. 552, 557 (Bankr. D. Conn. 2004). The Plaintiff's objection to the Debtor's discharge shall be sustained as the Debtor has clearly engaged in a continuing scheme to shield his assets from the Plaintiff. An appropriate order will issue.

**Date:** July 11, 2012           /s/ Jeffery A. Deller
                                  **JEFFERY A. DELLER**
                                  United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
  Andrew M. Gross, Esq.
  Anthony S. Dedola, Jr., Esq.
  Jospeh E. Fieschko, Esq.
  Robert H. Slone, Esq., Chapter 7 Trustee
  Office of the United States Trustee